UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERRY DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02764-JMS-TAB |
| | ) | |
| DENNIS REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

In August 2019, Terry Davis was punished through the Indiana Department of Correction's

(IDOC) Disciplinary Code for possessing part of a cell phone charger. Mr. Davis seeks relief from

his disciplinary conviction through a writ of habeas corpus. Because sufficient evidence supported

Mr. Davis's disciplinary charge, and because he was not deprived of due process, Mr. Davis's

petition is **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning

class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,*

485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018).

The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written

notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial

decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

According to a conduct report, Officer B. Patrick found "a cell phone charger box wrapped up in a pair of socks" while "inventorying" Mr. Davis's cell on the evening of August 4, 2019. Dkt. 9-1. A picture of the item shows that the "charger box" Officer Patrick confiscated is a two-pronged electrical plug that would connect to a cell phone or other electronic device with a cord. Dkt. 9-2.

On August 14, Mr. Davis received a screening report notifying him that he was charged with possessing an electronic device. Dkt. 9-4. According to the screening report, Mr. Davis requested security video to show that someone else placed the charger part in his cell. *Id.* The report does not, however, identify a specific time for video to be reviewed. *Id.* Officer A. Parrott signed the report as the screening officer, but Mr. Davis alleges in his petition that Officer Cooke actually performed the screening and got Officer Parrott to sign the report to cover her tracks. Dkt. 2 at 4.

Officer Cooke served as the disciplinary hearing officer and denied Mr. Davis's request to review the security video for fear that it would jeopardize prison safety or security. Dkt. 9-8. However, she reviewed security video from the area outside Mr. Davis's cell during the time of the inventory. *Id.* She prepared a written summary stating that staff arrived at 5:16 with a cart, that the cell was secured, and that they completed the inventory and removed Mr. Davis's property in the cart at 6:09. *Id.*

At his disciplinary hearing, Mr. Davis clarified that he wished to review security video from the hours leading up to the inventory so he could show that another inmate planted the charger part in his cell. Dkt. 9-7. Officer Cooke denied this request and found Mr. Davis guilty of

possessing an electronic device. *Id.* She assessed sanctions, including a loss of earned credit time. *Id.*

Mr. Davis raised the withholding of video evidence, among other issues, in his administrative appeals. Dkt. 9-10. The Facility Head denied Mr. Davis's appeal but stated that he reviewed the video Mr. Davis identified and found nothing exculpatory. *Id.* Mr. Davis's second-level appeal was also denied. Dkt. 9-11.

The respondent filed approximately three hours and fifteen minutes of security video from August 4, and the Court has reviewed it *in camera*. *See* dkt. 18. The camera is positioned at one end of an upper range, with a row of cell doors to the right. The camera faces the range, such that only the first two cell doors can be seen clearly on the right side of the screen. The camera angle does not allow the viewer to see the remaining cell doors or determine which cell is which.

The video begins at 12:44:59 P.M. About fifteen minutes into the video, a few inmates exit their cells and move about the range for the next couple hours. They appear to be cleaning the range. About 3:25, several cell doors open, and the entire unit appears enter the range. For the next 35 minutes—at which point the video ends—several inmates move freely about the range. Throughout the video, inmates can be seen entering and exiting cells on the right side of the screen. However, the camera angle and distance do not allow the viewer to determine whether any inmates entered Mr. Davis's cell specifically—much less whether they did so carrying an item as small as a cell phone charger plug.

### III. Analysis

Mr. Davis asserts three challenges to his disciplinary conviction. For the following reasons, none of Mr. Davis's challenges entitles him to relief.

**A.      Sufficiency of the Evidence**

Mr. Davis first asserts that his disciplinary conviction "was based on unreliable evidence." Dkt. 2 at 3. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Mr. Davis's argument fails under any evidentiary standard. He states that Officer Patrick confiscated a *cardboard* box, not an electronic device. Dkt. 2 at 3. But the photograph in the record shows that Office Patrick confiscated an object designed to be plugged into a wall outlet. Dkt. 9-2 at 2. The Disciplinary Code prohibits possession of electronic devices used to charge cell phones *See* dkt. 9-3 at § 207 (prohibiting unauthorized "possession of any electronic device, including . . . associated hardware" and "alteration of authorized electrical devices . . . for unauthorized

purposes, e.g., charging cellular telephones/electronic devices"). Officer Patrick's report and the photographic evidence support the hearing officer's conclusion that Mr. Davis possessed an electronic device.

### B.      Denial of Video Evidence

Mr. Davis next argues that he was denied due process when Officer Cooke refused to review security video from the hours before his cell was inventoried. Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present *material*, *exculpatory* evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

The video at issue here is neither exculpatory nor material. The video does not show an inmate or an officer entering Mr. Davis's cell and leaving behind part of a cell phone charger. Rather, it shows inmates moving about the range, in and out of cells that cannot be identified. To be fair, this evidence allows the *possibility* that someone entered Mr. Davis's cell and left the contraband there. But the video does not undermine or contradict the hearing officer's finding of guilt, and it certainly does not raise a reasonable probability that someone planted the contraband in Mr. Davis's cell without his knowledge. Excluding this video from the disciplinary process did not deprive Mr. Davis of due process.

Even if the video in question was material and exculpatory, Officer Cooke's failure to review it was harmless. *See Piggie v. Cotton*, 344 F.3d at 678 (harmless error applies to the right

to present exculpatory evidence in prison disciplinary proceedings); *Brenneman v. Knight*, 297 F. App'x 534, 538 (7th Cir. 2008) ("[T]he prison staff's refusal to find Brenneman's witnesses did not prejudice him, and thus did not violate due process, because Brenneman's appeal was denied even after he submitted statements from the three inmates who asserted that they saw Brenneman do nothing inappropriate."). Mr. Davis made an argument in his administrative appeal about what he expected the video to show. The Facility Head reviewed the argument and the video and upheld the conviction. Accordingly, any error by Officer Cooke was harmless.

**C.      Impartial Hearing Officer**

Finally, Mr. Davis alleges that several missteps by Officer Cooke deprived him of the right to be head by an impartial decisionmaker. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666.  Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Davis first asserts that Officer Cooke abandoned her impartiality by serving as both his "screening officer" and his disciplinary hearing officer. A screening officer—or "disciplinary review officer"—reviews conduct reports and conducts screening hearings. Dkt. 9-9 at 1. If necessary, the screening officer may amend a charge and correct errors in the conduct report. *Id.*

6

at 3. At screening, the screening officer advises the inmate of his rights, including his due process rights. *Id.* at 4-5.

The screening report indicates that Officer A. Parrott—not Officer Cooke—served as the screening officer. Dkt. 9-4. Granting for the sake of argument Mr. Davis's allegation that Officer Cooke actually performed the screening and got Officer Parrott to sign the report, this alone does not overcome the strong presumption that Officer Cooke presided over the case impartially. The disciplinary review officer essentially serves two purposes: reviewing the charge and advising the inmate of his rights. Mr. Davis was present at his screening, so he has personal knowledge of who advised him of his rights. However, he has not shown that he has personal knowledge that Officer Cooke reviewed and approved the conduct report. At most, he has shown that Officer Cooke advised him of his rights at the screening. In a criminal proceeding, a judge performs a similar function but is not disqualified from presiding over the trial. And in a criminal trial, a defendant has more—not fewer—due process rights than an inmate in a prison disciplinary proceeding. *See Wolff*, 418 U.S. at 556. If Officer Cooke advised Mr. Davis of his rights at screening, that alone does not mean she was an impermissibly biased hearing officer.

Mr. Davis also states that Officer Cooke demonstrated bias by telling him that she would be his "judge, jury, and prosecutor for all his cases" about two weeks before the disciplinary hearing. Dkt. 2 at 4.[1] If Officer Cooke made this remark, it was inappropriate. But a single off-hand comment made weeks before the disciplinary hearing is not clear evidence of dishonesty or a lack of integrity. And presiding over multiple disciplinary cases involving Mr. Davis would not, without more, deprive him of an impartial hearing officer. *Piggie*, 342 F.3d at 666.

---

[1] In his administrative appeals, Mr. Davis alleged that Officer Cooke told him that she would be his "judge, juror, and *executioner*." Dkt. 9-10.

Mr. Davis has not overcome the strong presumption that Officer Cooke presided over the disciplinary hearing impartially. As such, he has failed to identify a basis for habeas relief.

### IV. Conclusion

For the reasons discussed in Part III, Mr. Davis's petition for a writ of habeas corpus challenging disciplinary case ISR 19-08-0044 is **denied**, and the action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this entry.

   **IT IS SO ORDERED.**

Date: 11/30/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

TERRY DAVIS
966898
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

8